UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO.  3:16-CR-99-RGJ

UNITED STATES OF AMERICA,                                              Plaintiff,

v.

LEONARDO RODRIGUEZ PRADO, et al.,                          Defendants.

### Report and Recommendation

Defendant Leonardo Rodriguez Prado ("Prado") has filed a motion to suppress evidence

obtained from searches of his residence and car and from police interviews.  (DN 92.)  This

matter was referred to the undersigned for a report and recommendation on February 13, 2018.

(DN 102.)  On April 30, 2018, after hearing arguments from Prado and the United States, the

Court denied Prado's request for an evidentiary hearing because Prado did not make an initial

showing of contested facts.  *See U.S. v. Giacalone*, 853 F.3d 470, 483 (6th Cir. 1988); (DN 109.)

For the reasons stated below, the undersigned **RECOMMENDS** that Prado's motion to suppress

be **DENIED** in part and **DENIED** in part as **MOOT WITHOUT PREJUDCE**.

### I. Statement of Facts

The United States has alleged that on July 23, 2014, Prado used a re-encoded credit card

to purchase approximately $300 worth of merchandise from a local auto store without the credit

card owner's permission.  (DN 74, #397.)  After the owner contacted the police about the

unauthorized charges, Louisville Metro Police Department ("LMPD") officers visited the home

of Prado and his girlfriend, Lisandra Diaz Garcia ("Garcia")[1], and after obtaining Garcia's

---

[1] Garcia is also a co-defendant in this case, but has not filed a motion to suppress.

1

consent to search, discovered the bag of auto parts.  (*Id*.)  Prado was arrested and interviewed[2] by two LMPD officers, with one officer translating the interview into Spanish.  (*Id*.)  Prado admitted to using the credit card to make the purchase despite knowing that he did not have the owner's permission.  (*Id*.)  Before the interview, Prado signed a Spanish-language waiver form, which included the right to remain silent and the right to have counsel present during police interrogation.  (DN 97, #487.)

On December 29, 2014, Prado and Garcia were pulled over by LMPD officers following a traffic violation.  (DN 74, #398.)  After Prado and Garcia consented to the search of their vehicle, officers found numerous gift card purchase receipts and several re-encoded credit cards. (*Id*.)  The following day, Prado and Garcia visited the police station and were interviewed by police, with Garcia acting as a translator for Prado.  (*Id*.; DN 97, #494.)

In August 2016, Prado was charged with wire fraud and aggravated identity theft.  (DN 1.)  An additional charge, possession of unauthorized counterfeit access devices, was added in December 2016.  (DN 49.)  Finally, in September 2017, the United States filed a second superseding indictment against Prado, adding the charges of bank fraud, conspiracy to commit money laundering, and money laundering; the second superseding indictment also added additional charges of aggravated identity theft.  (DN 62.)  On July 19, 2017, the Court adopted the undersigned's recommendation that the Court deny a previous motion to suppress filed by Prado, which sought to suppress statements he made to police in April 2016.  (DN 55.)  The current motion before the Court seeks to suppress evidence obtained in July and December 2014.

---

[2] The interrogation was videotaped, and a copy of the video has been entered into the record and provided to the Court.

## II. Legal Standard

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. U.S. CONST. AMEND. IV. The Supreme Court has stated that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The government argues that one of the most common exceptions, consent, is applicable here. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). When the government seeks to rely on a defendant's purported consent to constitutionally justify a search, it bears the burden of proving that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

## III. Analysis

Prado seeks to suppress the evidence obtained from four interactions with the police – (1) a July 23, 2014 search of his home; (2) a July 23, 2014 police interrogation; (3) a December 29, 2014 search of his vehicle; and (4) a December 30, 2014 interview with police. The Court will address these in turn.

### A. July 23, 2014 Residential Search

First, Prado contests the July 23, 2014 search of the residence he shared with Garcia which ultimately lead to the LMPD finding the bag of auto parts. Although the search was conducted without a warrant, the United States argues that because it was conducted with

3

Garcia's consent, it was constitutional.  (DN 97, #485–86.)  The United States has produced a Spanish-language "consent to search" form, signed by Garcia, as evidence that Garcia consented to the search.  (DN 97-2, #947.)  Prado's argument appears to be a purely legal one, as he does not argue that Garcia did not give valid consent or that the consent form is somehow invalid.  In his original motion to suppress, Prado states that the government "must show that Mr. Prado understood that a search of his residence was being requested and that he was given a fair opportunity to object."  (DN 92, #457.)  In his supplemental reply briefing, Prado does not expound on that argument, but instead directs the Court to police body camera footage of an April 2016 search of his residence.  (DN 110, #661.)  In that footage, Prado states, Garcia can be seen requesting a "paper" to sign because the last time the police searched her house, they "lied about everything."  (*Id*. at 652.)  It is unclear from Prado's submission whether Garcia was referring to the July 23, 2014 search of her residence when she referenced "the last time."[3] Prado argues that this footage from April 2016 calls into question whether Garcia freely gave her consent for the police to search on July 23, 2014.  (*Id*.)

A search conducted pursuant to voluntary consent is a well-recognized exception to the Fourth Amendment's warrant requirement.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  "The government bears the burden of demonstrating by a preponderance of the evidence, through clear and positive testimony…that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion."  *U.S. v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011) (citing *U.S. v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)).  In his original motion to suppress, however, Prado does not argue that Garcia did not give valid

---

[3] This problem is compounded by the fact that Prado did not include a copy of the April 2016 search for the Court to review along with his supplemental reply brief.

consent; it is not until his supplemental reply brief that he hints that Garcia's consent was not freely given. (DN 110, #662.) Even there, the furthest he goes in contesting Garcia's consent is by arguing that the video of a subsequent search two years after the fact "casts serious doubt" on the validity of her consent to the July 2014 search. (*Id.*) Because Prado failed to contest the validity of Garcia's consent in his original motion to suppress and only (equivocally) raises the issue in his supplemental reply brief, the Court deems that argument as having been improperly raised. *U.S. v. Sweeney*, 2013 WL 1489108, at *3 (E.D. Tenn. Feb. 7, 2013) (holding that arguments raised in a supplemental brief in reply to the government's response to a motion to dismiss were improperly raised) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Therefore, the Court will only consider Prado's original argument of whether his Fourth Amendment rights were violated when the police did not obtain his consent (in addition to that of his co-occupant, Garcia) before searching his residence.

While it is true that the police may conduct a valid consent search of a residence through the consent a co-occupant who possesses common authority over the residence, *U.S. v. Matlock*, 415 U.S. 164, 171 (1974), the police cannot continue on with the search of the residence when a second occupant is present and refuses to give consent. *Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006). But this is not what happened here. It is uncontested that both Garcia and Prado were present at their residence while LMPD officers conducted their search, and it is also uncontested that Garcia gave consent for the police to search. (DN 92, #457; DN 97, #486.) But despite being present during the search, there is no evidence to indicate – and Prado does not attempt to argue – that he refused to give his consent. And contrary to his assertion that the government must "show that [he] understood that a search of his residence was being requested

and that he was given a fair opportunity to object,"[4] there is no such requirement.  Instead, the rule in the Sixth Circuit and the rest of the country is that potential objectors "lose out" when they are present for the search and do not affirmatively object to the search.  *U.S. v. Ayoub*, 498 F.3d 532, 537, 540 (6th Cir. 2007) (citing *Randolph*, 547 U.S. at 121); *U.S. v. Stanley*, 351 Fed. App'x. 69, 72 (6th Cir. 2009).  This rule has even been extended to scenarios where the potential objector is physically present for the search but unable to object.  *See U.S. v. Davis*, 283 Fed. App'x. 370, 373–74 (6th Cir. 2008) (holding that a consent search was valid when defendant's co-occupant consented to the search and defendant, asleep in his bed, did not respond to the officers' shouts).

Both parties are in agreement that Prado was physically present during the search of his residence but did not object to the search.  Garcia, however, as a co-occupant of the residence, gave her consent to search.  Therefore, the search of his residence was lawful, and all evidence subsequently recovered during the search was lawfully obtained.

### B. July 23, 2014 Police Interview

Next, Prado alleges that his constitutional rights were violated when he was interviewed by LMPD officers following his arrest.  Specifically, he argues that he was not fully informed of his rights prior to signing a waiver of rights provided to him by the police officers.  (DN 92, #458.)  During the interrogation, LMPD Officer Ruben Cardosa asked Prado, in Spanish, "[s]o do you want to talk, or do you want an attorney?"  (DN 97-5, #505.)  He answered "[b]oth things," and chuckled.  (*Id*.)  Officer Cardosa then asked Prado, "[d]o you want to talk…to him?" while indicating to LMPD Detective McConnell with his hand.  (*Id*.)  Prado replied with, "[y]es, whatever he asks, I will answer."  (*Id*.)  Shortly thereafter, the officers presented Prado with a

---

[4] (DN 92, #457.)

Spanish-language waiver form and told him to "[r]ead it. You need to read it."  (*Id*. at 506.)  The video of the interrogation shows Prado reading over the waiver form while the officers indicate that he should write his initials next to each right, but only if he understands them.  Prado did so and eventually signed the waiver of rights form underneath the section titled "waiver of rights." (DN 97-4.)  The substance of the waiver of rights form, translated into English, is as follows:

### <u>Your Rights</u>

Before we ask you any questions, you must understand your rights.

1. You have the right to remain silent.

2. Anything that you say may be used against you in court.

3. You have the right to speak with an attorney so that he may counsel you before we ask you any questions and to have him present during the interrogation.

4. If you cannot pay for the services of an attorney, one will be assigned to you by the court, before interrogating you, if that is what you wish.

5. However, if you decide to answer any questions now, without an attorney present, you will have the right to stop the interrogation at any time until you consult an attorney.

### <u>Waiver of Rights</u>

I have read this statement, or it has been read to me, and I understand what my rights are. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises have been made, or threats made against me and no pressure or coercion of any kind has been used against me.

(DN 97-4, #501) (emphasis in original).

Prado argues that his comment of "[b]oth of those things," made in response to the question of whether he wanted to talk to Detective McConnell or speak with an attorney first, is an indication that he exercised his *Miranda* right to counsel.  (DN 92, #458.)  Additionally, he argues that the rights waiver form does not "include a mention of a lawyer in the waiver part of

the form," whereas the English language version does.  (*Id.*)  In his supplemental reply, Prado repeatedly complains of the United States's characterization of his statement, "[b]oth of those things," as a joke, but does not expand on his original argument otherwise.  (DN 110, #663–64.)  In response, the United States argues that Prado's comment was too ambiguous to invoke his *Miranda* right to counsel, and even if it was unambiguous, his subsequent actions of reading the waiver form, initialing next to each right, signing the waiver, and then speaking with the  police are "more than sufficient to show he knowingly and intelligently waived his rights."  (DN 97, #490.)

Just as he may do with most other rights, a defendant may waive effectuation of his *Miranda* rights provided that the waiver is made "voluntarily, knowingly, and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  A valid waiver has two components.  First, a defendant must make the decision to waive his rights without being coerced, intimidated, or deceived into doing so.  *Id.*  Second, the waiver must have been made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*  A defendant is not required to understand every possible consequence of a waiver, but is instead only required to know that he can choose not to talk to police, talk only with an attorney present, and discontinue talking at any time.  *U.S. v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015) (citing *U.S. v. Lawrence*, 735 F.3d 385, 435–36 (6th Cir. 2013)).  Courts look to the "totality of the circumstances" surrounding the interrogation to determine if both elements have been satisfied. *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979); *Fare v. Michael C.*, 442 U.S. 707, 724–25 (1979).

8

After reviewing the video of the interrogation, a translated transcript of the interrogation, and the signed waiver form, the undersigned concludes that Prado's *Miranda* rights were not violated. To start, it is important to note that evidence of a signed waiver form is strong proof that a defendant's waiver was valid. *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979). Although it is not conclusive proof that Prado waived his rights, it certainly tends to support the government's position that there was a valid waiver. As to the first element of *Moran*, Prado does not allege – and there is certainly no evidence to indicate – that he was the victim of police coercion or intimidation. To the contrary, the video of the interrogation does not show the LMPD officers behaving aggressively towards Prado or pressing him to sign the waiver form. There is also no evidence to indicate that the officers threatened Prado with some form of retaliation if he refused to sign the waiver form.

As for the second *Moran* element, Prado's assertion that "it was not made clear to [him] that he had the right to have an attorney present at questioning"[5] is unpersuasive, as he not only read (in Spanish) that he had the right to have an attorney present during questioning, but he signed his initials next to that right to indicate that he fully understood it. (DN 97-4, #499.) Prado's response that he wanted "[b]oth of those things" is ambiguous at best and a "joke" at worst; it is thus insufficient to invoke his right to counsel under *Miranda*. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *Davis v. U.S.*, 512 U.S. 452, 459 (1994). Instead of looking at Prado's statement in a vacuum, the undersigned views it within the context of Prado's entire interaction with the police; immediately after making that statement, and with the knowledge that he could terminate the interrogation at any time to speak with an attorney, Prado signed the waiver form and proceeded to speak with police for roughly thirty minutes about the

---

[5] (DN 92, #458.)

allegations of credit card fraud.  When viewed together, Prado's actions indicate that he was well-apprised of his right to counsel and his right to remain silent before he decided to speak to the LMPD about the allegations.

Prado's argument about the variation between the English and Spanish versions of the waiver of rights form is similarly unpersuasive.  *Miranda* does not require that a person being interrogated by police be informed of his rights in any one particular way, only that he be fully informed of them.  *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (stating that operative question "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived" the rights delineated in the *Miranda* case) (quoting *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)).  Prado does not cite to any legal authority to support his claim that he is entitled to have his *Miranda* rights conveyed to him in a specific form, or that non-English waiver forms must be exactly the same as their English counterparts.

The undersigned concludes that Prado knowingly and voluntarily waived his *Miranda* rights before being questioned by the LMPD officers, and therefore recommends that his motion to suppress the statements he made be denied.

### C. December 29, 2014 Vehicle Search

Next, Prado contests the evidence obtained from a December 29, 2014 consent search of the vehicle that he and Garcia were traveling in.  In his motion to suppress, Prado correctly states that it is the government's burden to prove that either Garcia or Prado gave their consent to search the vehicle, but he goes no further.  (DN 92, #458.)  Prado does not argue that either he or Garcia refused to give consent, that the consent was obtained via coercion or intimidation, or even that the initial traffic stop was unlawful.  In response, the United States points to a "consent

10

to search" form that Garcia signed as evidence that she and Prado consented to the search of their vehicle. (DN 97, #492.) The day after the vehicular search, both Prado and Garcia admitted in an interview with the police that they had consented to the search. (DN 97, #492.) In his supplemental reply, Prado argues that the consent to search form is invalid because Garcia signed it after the search had already occurred, as evidenced by data contained within the "investigative report." (DN 110, #664.) Specifically, Prado states that the form was signed by a Detective Maroni, but that Detective Maroni only arrived on the scene after the vehicular search was finished – the consent, therefore, was obtained after the fact. (*Id.*) Prado, however, did not attach the investigative report as an exhibit to his supplemental reply, and a review of the record in this case does not turn up a copy of said report. Even so, the Court will accept Prado's representation that Detective Maroni did not arrive onto the scene of the stop until after the search was completed.

"The government bears the burden of demonstrating by a preponderance of the evidence…that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *U.S. v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011) (quoting *U.S. v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)). As with the waiver of Prado's *Miranda* rights, the Court looks to the totality of the circumstances to determine whether consent was freely given. *U.S. v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

Based on the totality of the circumstances, the undersigned concludes that both Prado and Garcia freely gave their consent for the police to search their vehicle. First and most importantly, Prado does not challenge the government's version of events; he never alleges that he did not give consent or that the police coerced or intimidated him into consenting. His

11

discussion on this issue is limited to accusations that the government's evidence does not prove that he did give consent.  (DN 92, #458–59; DN 110, #664–65.)  In essence, Prado admits that either he or Garcia gave consent to search their vehicle, but he does not believe that the United States has sufficient proof of it.   Second, while Prado is correct in asserting that the signed consent to search form is not conclusive proof that Garcia consented to the search, it is certainly relevant in the analysis because it lends credence to the government's assertion that Garcia gave verbal consent to search; it would be illogical for Garcia to initially refuse a search, but minutes later sign a waiver form allowing the police to search her vehicle.  Finally, during her interview with police the following day, Garcia told the officers interviewing her and Prado that they had consented to the search of the vehicle.   Garcia had the following exchange with Detective Maroni:

> LG [Garcia]: And he [the police officer] just stopped, and they say, "Can I see your car inside?" And we don't have any problem, you know? We don't have nothing to hide.
>
> . . .
>
> DM [Detective Maroni]: And, uhm… So, that's why he pulled you over, and then did he ask you if he could search your car? And you guys said okay. It was okay. You didn't have any problem with that?
>
> LG: Exactly. We said, yes, it's okay.

(DN 97-8, #571–73.)   Based on Garcia's own statements the day after the search and her contemporaneous signing of a consent to search form, the undersigned finds that Garcia (and as a result, Prado) consented to the search of their vehicle, and therefore recommends that his motion to suppress the evidence derived from the search of the vehicle be denied.

### D. December 30, 2014 Police Interview

Finally, Prado contests statements he made during the above-referenced interview with police officers the day following his traffic stop.  At the April 30, 2018 hearing, however, the United States indicated that it would not be using any evidence gathered from Prado's interview. Based on the government's representation, Prado agreed to not hold an evidentiary hearing on the circumstances surrounding the interview.  Therefore, the undersigned recommends that the Court deny Prado's motion in regards to the December 30 interview as moot, but with leave to reinstate if the United States seeks to introduce the evidence in the future.  *See U.S. v. Steverson*, 230 F.3d 221, 223 (6th Cir. 2000) (noting that the District Court had "found the motion to suppress statements to be moot" after the government noticed its intent to not use them in its case in chief; *U.S. v. Zaki Amawi*, 2008 WL 183391, at *1 (N.D. Ohio. Jan. 18, 2008); *U.S. v. Thompson*, 2007 172520, at *4 (E.D. Tenn. Jan. 17, 2007).

### IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that Prado's motion to suppress (DN 92) be **DENIED** in part and **DENIED** in part as **MOOT WITHOUT PREJUDCE**.

cc:  Counsel of record

13

**Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.   A copy shall forthwith be electronically transmitted or mailed to all parties.   28 U.S.C. § 636(b)(1)(C).   Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.   Fed. R. Crim. P. 59(b)(2).   Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.   Id.; United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981); see also Thomas v. Arn, 474 U.S. 140 (1985).